The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and arguments on appeal. The appealing party has shown good grounds to reconsider the evidence. Having reconsidered the evidence, the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 19 March 1993, in an Industrial Commission Form 26 Supplemental Agreement for Compensation, which was approved by the Commission on 23 May 1993, in a Pre-Trial Agreement and at the hearing on 18 July 1996 as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case. The parties are properly before the Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times herein.
2. State Farm Fire Casualty Company was the carrier on the risk at a all relevant times.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury to her cervical spine on 7 December 1992, as a result of which the parties entered into an Industrial Commission Form 21 Agreement for Compensation.
5. Plaintiff's average weekly wage on 7 December 1992 was $347.50, which yields a compensation rate of $231.68.
6. As a result of the admittedly compensable injury, plaintiff received temporary total disability compensation from 31 December 1992 through 7 March 1993 through the approved Form 21. Plaintiff returned to light duty work on 8 March 1993, following which she received temporary partial disability compensation pursuant to the approved Form 26 through 20 October 1993.
7. The issues for determination are:
 a. Whether plaintiff is entitled to additional temporary total disability compensation after 20 October 1993;
 b. Whether plaintiff is entitled to permanent partial and total disability benefits after 20 October 1993, and;
 c. Whether plaintiff is entitled to additional medical compensation after 20 October 1993.
8. The parties submitted eighty-one pages of medical reports into evidence following the hearing on 16 July 1996.
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-one years old with a tenth grade education. She had obtained a GED, received a nurse's assistant degree in 1976 and a practical nursing degree in 1977 both from College of the Albemarle.
2. Plaintiff worked for defendant-employer as a nurse from 1986 until October 1993. Plaintiff's job duties included cleaning the patient examination rooms, placing instruments in the autoclave for sterilization, preparing insurance forms, photocopying patient's records, filing, assisting patient's to examination rooms, performing laboratory work, including drawing blood and taking urine samples and using the telephone to speak with patients and to call in prescriptions to the pharmacy. Plaintiff's job required movements of her neck to use the telephone, file paperwork, copy records and prepare insurance forms. Plaintiff also moved her neck to observe, assist and speak with patients.
3. Following her injury, plaintiff was treated by Dr. K. Stuart Lee, a neurosurgeon. Prior to this examination, plaintiff had not had any injuries to her back or neck. Dr. Lee performed a CT Scan and a MRI which revealed slight bulges at the C5-6 and C6-7 levels with no evidence of spinal cord or nerve root irritation. Dr. Lee noted that in his opinion her problem was one of fibromyalgia or fibrositis.
4. Plaintiff was then referred to Coastal Rehabilitation by Helen Harmon, M.D. for a functional capacity evaluation which was performed on 7 September 1993. As of the date of this evaluation, plaintiff had experienced ongoing pain in her back, neck and right shoulder during the nine months since her injury and was working full time as for defendants with a twenty pound lifting restriction.
5. The functional capacity evaluation did not suggest symptom magnification. On the pain drawing, plaintiff described pain at the lower cervical spine just to the right of the C6-7 as well as pain in the right rhomboid region as well as the right subocipital region. Plaintiff reported that her right arm often swelled after light exercise and with over-activity. The results of this test placed plaintiff's physical demand level in the light category. This category is defined as being able to safely handle loads of up to 20 pounds occasionally and 10 pounds frequently.
6. Dr. Helen Harmon examined plaintiff on 13 August 1993 and 21 September 1993. At the examination on 13 August 1993, Dr. Harmon found that plaintiff was experiencing chronic myofascial cervical spine pain an right trapezius pain. Dr. Harmon assigned a three percent (3%) permanent partial disability rating for plaintiff's cervical spine. Dr. Harmon also assigned a twenty pound permanent weight lifting restriction and recommended that plaintiff avoid twisting and lateral motion of the cervical spine.
7. On 20 October 1993, plaintiff resigned from her position with defendant-employer. Plaintiff resigned her position because she had continued to experience neck, back and right shoulder pain during the eight months since her injury by accident. Plaintiff had also experienced sleeping difficulties as the result of her pain. This combination of problems had caused plaintiff to become physically fatigued and depressed to the point she was no longer able to perform her duties for defendant-employer.
8. After tendering her letter of resignation to defendant-employer, plaintiff inquired as to whether there was another, less stressful position that was available. Defendants responded that there was no such positions available.
9. Dr. Randall Sherman, a neurosurgeon, examined plaintiff on 17 February 1994. At the time of this examination, plaintiff continued to experience posterior cervical parascapular, deltoid and bicep pain and some paresthesias in the middle, ring and little finger of the right hand. Dr. Sherman assigned a five percent 5% permanent partial disability rating for plaintiff's cervical spine.
9. In March 1994, plaintiff found employment as a secretary-bookkeeper with Saunders Sons where she worked two to four hours per week earning $37.53 per week. Plaintiff earned a total of $3,600.00 for the year 1994 working in this position.
10. Plaintiff sought further medical treatment from Albemarle Mental Health Center because of continuing symptoms of anxiety and depression resulting from chronic pain. Plaintiff testified that she was referred from Albemarle Mental Health to Southeastern Neurology Group, P.C. and Maryview Pain Clinic in Portsmouth, Virginia and admitted on 16 May 1994. Defendants were notified of this referral on or about 19 May 1994. On or about 3 June 1994, defendants requested the approval of the Industrial Commission to be relieved of any financial responsibility for this medical treatment. The Industrial Commission approved defendants' request on 13 June 1994.
11. Following this action by the Commission, plaintiff submitted an Offer of Proof as provided by Rule 103(a)(2), Rules of Civil Procedure. The offer of proof consisted of note from Southeastern Neurology Group, P.C. dated 16 May 1994 which stated "Admitted to Maryview Medical Center's Pain Management Unit for local myofascial pain syndrome involving right shoulder, arm and neck due to work related injury." Additionally, the offer of proof included a prescription from Southeastern Neurology Group, P.C. dated 3 June 1994 which stated "Physical therapy x 12 sessions myofascial pain right shoulder and neck." The offer of proof further consisted of an progress note from Southeastern Neurology Group, P.C. dated 19 July 1994 which states, "Barbara Saunders is a 49-year-old woman previously seen by me on the pain management unit with myofascial pain involving the right neck, arm and upper quarter."
12. Plaintiff testified that the medical treatment provided by Dr. Biondi resulted in the improvement of her condition. After considering the record of evidence and the offer of proof submitted by plaintiff, the Full Commission finds that the prior Commission Order denying treatment by these physicians was improvidently filed. The treatment provided to plaintiff by Dr. Biondi, the Southeastern Neurology Group, P.C. and the Maryview Pain Clinic should have been approved as it was reasonably designed to effect a cure or provide relief from plaintiff's condition which was caused by her compensable injury of 7 December 1992.
13. Beginning on 5 May 1995, plaintiff began working as a ward clerk at Chowan Hospital in Edenton, North Carolina where she earned $6.05 per hour. Plaintiff resigned from that employment on 17 September 1995 because she was no longer mentally or physically able to cope with the job because of her injury and chronic pain. Plaintiff earned $4,180.24 from employment with Chowan Hospital.
14. Plaintiff's continuing chronic pain and related symptoms were directly related to and caused by her specific traumatic incident of 7 December 1992.
15. Since 20 October 1993, defendants have not offered plaintiff any suitable work, nor have they provided her with physical therapy or vocational rehabilitation. The periods in which plaintiff was able to find suitable work since this date were the result of her own efforts.
16. According to her treating physicians, plaintiff reached maximum medical improvement on 21 September 1993.
17. As the result of her specific traumatic incident of 7 December 1992, plaintiff was unable to earn wages in her former position with defendants or in any other employment from 20 October 1993 through the present and continuing, except for the weeks in 1994 she was able to work for Saunders Sons and from 5 May 1995 through 17 September 1995 while she was employed at Chowan Hospital.
18. As the result of her specific traumatic incident of 7 December 1992, plaintiff was capable of earning reduced wages during the period in 1994 she worked for Saunders Sons and from 5 May 1995 through 17 September 1995.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 7 December 1992, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment as a direct result of a specific traumatic incident of the work assigned. G.S. § 97-2(6).
2. The Industrial Commission Form 21 Agreement for Compensation, approved by the Commission on 19 March 1993, created a presumption of continuing disability in plaintiff's favor. G.S. § 97-29; Kisiah v. W. R. Kisiah Plumbing, Inc., 124 N.C. App. 72,476 S.E.2d 434 (1996); disc. rev. denied, 345 N.C. 343,483 S.E.2d 169 (1997). The fact that plaintiff reached maximum medical improvement does not equate with being able to earn her pre-injury wage level, and does not rebut the presumption of continued disability. Id.
3. Defendants have not presented evidence sufficient to rebut the presumption of continued disability raised by the approved Form 21 Agreement. Id. Plaintiff is therefore entitled to the continuing presumption of disability. Id.
4. As the result of her specific traumatic incident of 7 December 1992, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $231.68 per week from 20 October 1993 through the present and continuing until such time as she returns to work or until further order from the Commission, except for the weeks in 1994 that she was able to work for Saunders Sons and from 5 May 1995 through 17 September 1995 while she was employed at Chowan Hospital. G.S. § 97-29.
5. As the result of her specific traumatic incident of 7 December 1992, plaintiff is entitled to be paid by defendants temporary partial disability compensation at the rate of two-thirds the difference between her average weekly wage at the time of her injury and the wages she was able to earn on weekly basis in 1994 when she was able to work for Saunders Sons in 1994 and from 5 May 1995 through 17 September 1995 while she was employed at Chowan Hospital.
G.S. § 97-30.
6. As the result of her 7 December 1992 injury by accident, plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred, including the treatment provided by Dr. Biondi, the Southeastern Neurology Group, P.C. and the Maryview Pain Clinic. G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $231.68 per week from 20 October 1993 through the present and continuing until such time as she returns to work or until further order from the Commission, except for the weeks in 1994 that she was able to work for Saunders Sons and from 5 May 1995 through 17 September 1995 while she was employed at Chowan Hospital. The amount of compensation which has accrued shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay plaintiff temporary partial disability benefits at the rate of two-thirds the difference between her average weekly wage at the time of her injury and the wages she was able to earn on weekly basis in 1994 when she was able to work for Saunders Sons in 1994 and from 5 May 1995 through 17 September 1995 while she was employed at Chowan Hospital. This compensation having accrued, shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
3. Defendants shall pay all medical expenses incurred or to be incurred as the result of plaintiff's 7 December 1992 injury by accident, including the treatment provided by Dr. Biondi, the Southeastern Neurology Group, P.C. and the Maryview Pain Clinic.
4. A reasonable attorney fee in the amount of twenty-five percent (25%) of the compensation benefits due under the above Award is hereby approved for plaintiff's counsel. From the amounts of compensation which have accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall pay the costs.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER